**IN THE COURT OF APPEALS OF IOWA**

No. 21-1681
Filed March 30, 2022

**IN THE INTEREST OF D.M.,**
**Minor Child,**

**K.M., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


        The mother appeals the termination of her parental rights.  **AFFIRMED.**


        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant

mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for Appellee State.

        Bo Woolman and Erin Mayfield (until withdrawal) of the Youth Law Center,

Des Moines, attorneys and guardians ad litem for minor child.



        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to D.M., born in 2019, under Iowa Code section 232.116(1)(b), (e), and (h) (2021). On appeal, the mother focuses her argument on a request for more time, urging the delay would cause no harm to D.M., who is in the care of the child's father. With more time, the mother argues her involvement in D.M.'s life could be regulated by a bridge order rather than through termination proceedings. *See* Iowa Code § 232.103A (allowing juvenile court to close a child-in-need-of-assistance case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a "bridge order" if certain criteria are met).

We review termination proceedings de novo. *In re L.B.*, ___ N.W.2d ___, ___, 2022 WL 495312, at *1 (Iowa 2022). In undertaking the review, our paramount concern is the child's best interests. *Id.*

Here, the child was removed from the mother's care in January 2020, when the child was less than four months old, over concerns involving the mother's use of methamphetamine, her mental-health issues, and her perpetration of domestic violence against the father while the child was present. The child was still out of the mother's care in October and November 2020, when the mother admitted to relapsing on methamphetamine for a period of time—not just a single use.[1] Because of her forthrightness about her continued issues and her stated desire to

---

[1] At the termination trial, the mother testified she had not actually relapsed. She testified she believed she was putting methamphetamine in a pipe and smoking it—which is why she reported a relapse to the social worker—but after reviewing her medical records, which included drug screens that were not positive for methamphetamine, she believed she must have been smoking Tylenol instead. The juvenile court did not find this testimony persuasive, and neither do we.

get help, the juvenile court granted the mother a six-month extension in January 2021. But then the mother disappeared from the child's life. The mother had a visit with the toddler through an online video platform on February 8, 2021, and then had no other contact as of the August 17 termination trial. The mother also had no contact with the social worker from the Iowa Department of Human Services or the family support specialist from March until the termination trial.

The mother asks for additional time. Under Iowa Code section 232.104(2)(b), the court may delay permanency for six months if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." But here, the mother was already given a six-month extension in January 2021. And then she squandered the additional time by absenting herself from D.M.'s life for more than six months. The child was less than two years old at the time of the termination trial and had been out of the mother's care more than eighteen of those months. "Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months." *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). Another six-month extension is not appropriate. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").

The mother argues the court need not terminate her parental rights because the father is caring for D.M. and the mother's relationship with the child could be regulated by a bridge order. Section 232.116(3)(a) provides that the court need not terminate when "[a] relative has legal custody of the child." The court has the

discretion to apply the exception based on the facts of the specific, unique case before it.  *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018).  And the parent urging the exception has the burden to establish the exception.  *Id.*  In its written ruling, the juvenile court found, "Mother failed to present evidence that applying this exception would be in the child's best interest."  So we question whether this claim is preserved for our review.  *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) ("As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal.").

Even if properly preserved, we conclude application of the exception is not warranted here.  We note the father supported termination of the mother's rights.  And the mother and father's past relationship was marred by violence, as the mother admitted to and was arrested for perpetrating domestic violence against the father.  Based on how long the child has been out of the mother's care relative to the child's age—and how long the mother was absent from the child's life leading up to the termination hearing—we cannot conclude saving the parent-child relationship is in D.M.'s best interests.  *Cf. In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992) ("It is not in the children's best interests to interpret the language of the subsections to prevent termination of the noncustodial parent's rights when the children are placed in the separate home of the other parent.").

**AFFIRMED.**